UNITED STATES SHIPBUILDING CO. v. CONKLIN et al.

(Circuit Court of Appeals, Third Circuit. November 28, 1903.)

No. 28.

**1. CORPORATIONS—APPOINTMENT OF RECEIVER—FEDERAL COURTS.**

Under the established rule that a new equitable right created by a state statute may be enforced in a federal court, where it can be so enforced in conformity with the pleadings and practice in equity, the right given by the New Jersey statute (Revision 1896, p. 298, §§ 65, 66) to creditors or stockholders of a corporation which has become insolvent to apply to a court of chancery for an injunction and receiver may be enforced in a federal court by mortgage bondholders and stockholders of an insolvent corporation who have a lien on its property by express contract, where such court has jurisdiction by reason of diversity of citizenship and the value in dispute.

**2. SAME—EQUITY JURISDICTION.**

A court of equity has power independently of statute to appoint a receiver for an insolvent corporation at suit of its mortgage bondholders and stockholders, where the bill alleges that the insolvency was produced by the gross mismanagement of its directors, who are also charged with positive misconduct amounting to a breach of trust.

**3. SAME—REVIEW ON APPEAL.**

The appointment of a receiver for an insolvent corporation is largely within the discretion of the court, and an order making such appointment, where within the court's jurisdiction, will not be disturbed on appeal, unless it appears to have been improvidently made.

¶ 2. See Corporations, vol. 12, Cent. Dig. §§ 2203, 2206.

Appeal from Circuit Court of the United States for the District of New Jersey.

Charles L. Corbin and John G. Johnson, for appellant.
Samuel Untermyer and R. V. Lindabury, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This is an appeal from an interlocu- tory order entered in the Circuit Court of the United States for the district of New Jersey on June 30, 1903, appointing a receiver for the defendant below (the appellant), the United States Shipbuilding Company, a corporation of the state of New Jersey, and awarding an injunction against the company, its directors and officers.

The complainants in the bill are first mortgage bondholders and stockholders of the defendant corporation. The suit was commenced on June 11, 1903. The bill of complaint charges and with particu- larity sets forth matters tending to show that the defendant corpora- tion is insolvent. The bill alleges that the defendant has large past- due obligations, which it is unable to meet, and has no funds with which to pay its maturing accounts or bills payable, and no means of securing extensions thereof or further credit; that "the defend- ant has bills payable maturing between now and August 1st, inde- pendent of maturing accounts, amounting to over $410,000, which it is unable to pay, in addition to which the defendant owes a very large amount of current accounts, amounting to a number of hun- dreds of thousands of dollars, and which will mature between now and July 1st," which it will be unable to meet, and that it has neither funds nor credit with which to continue its business; and that its directors have determined to make default in the payment of the in- terest maturing on July 1, 1903, on its bonded debt, and have so an- nounced. The bill further charges that the directors of the defend- ant corporation have recklessly mismanaged its affairs, and that by their mismanagement the insolvency of the corporation has been brought about.

The exhibits attached to the bill show that the defendant corpora- tion was organized on June 17, 1902, and that by an amended cer- tificate filed on August 1, 1902, its capital stock was largely in- creased; that within 10 months thereafter, to wit, on May 25, 1903, a reorganization plan was publicly issued and circulated by a reor- ganization committee, at least one of whom was a member of the board of directors of the company; that to the communication by the reorganization committee to the holders of bonds and stock of the corporation of the proposed plan of reorganization was attached a letter signed by the president of the company, indorsing the scheme and recommending its acceptance, and also a letter signed by the treasurer of the company showing its serious financial embarrass- ment and its absolute need of new cash working capital. This plan provides for the surrender of all of the outstanding first mortgage bonds, and the cancellation of the mortgage on the shipbuilding plants given to secure these bonds, and the substitution therefor of preferred stock, the same to be subject to a mortgage given on the

plant to secure $2,000,000 to be advanced, as well as $10,000,000 of outstanding bonds now secured by a mortgage on the plant of the shipbuilding company second to that sought to be canceled; and, in addition to securing a first mortgage for the mortgage now secured by a second lien, the person furnishing the $2,000,000 of working capital is to be entitled to receive $1,500,000 of preferred stock and $1,600,000 of common stock in the new company to be organized for taking over the plants. In their published communication of the proposed plan of reorganization to the holders of bonds and stock of the defendant corporation the reorganization committee make the following statements, which are substantiated by the letter of the treasurer of the company above referred to:

"By reason of the excessive mortgage obligations of the United States Shipbuilding Company, its borrowing capacity and credit has become so seriously affected that outstanding notes are being pressed for payment, and the making of further loans is rendered impossible. * * * The United States Shipbuilding Company has. been compelled, from its organization, to make advances from time to time to its constituent companies, for working capital and cost of operation, most of the available cash in hand. The reduction of the working capital thus disclosed, and the impracticability of drawing upon the resources of the shipbuilding plants, have resulted in a material impairment of the cash assets of .the United States Shipbuilding Company. The company will be unable on July 1, 1903, to meet the interest or sinking fund accruing on its first mortgage thirty year bonds. * * * A readjustment, therefore, is imperative in order to give a fair and equitable recognition to the holders of the respective securities; to establish sound financial credit; to secure additional cash working capital for the necessary improvements in the various properties; and for the liquidation of the floating obligations of all the companies."

The bill also charges that large quantities of the bonds and stock of the defendant corporation have been issued to its directors and others without any proper or sufficient consideration.

To further indicate the scope of the bill of complaint and relief sought, we quote the twenty-ninth paragraph of the bill:

"Twenty-Ninth. Your orators further state that it is necessary in the interest of all the stockholders of the defendant that a receiver, representing all the stockholders and creditors, should bring suit against the directors of said defendant and all others who have received stock and bonds of said defendant without any consideration, and should bring suit in the interest of all the stockholders and creditors of said defendant against the directors for the damages suffered by the corporation by their mismanagement of its affairs, and for a proper accounting, and to cancel all stock of defendant that was illegally or improperly issued, and to rescind the transaction of the purchase of the Bethlehem Steel Company, and recover back the consideration paid on such purchase."

Upon the proofs submitted the Circuit Court found and decreed "that the defendant corporation is insolvent, and is not about to resume its business in a short time with safety to the public and advantage to its stockholders, and that the complainants are otherwise entitled to the appointment of a receiver on the ground of the insolvency of the defendant and the action of its directors in connection with the conduct of its affairs." And in its opinion the court said that the directors were doing nothing to relieve the company from its financial embarrassment, and that it "would appear

that the directors of the company have abdicated their powers, and that the company is drifting along without guidance."

By the corporation act of the state of New Jersey (Revision 1896, p. 298, §§ 65, 66), it is enacted that whenever any corporation shall become insolvent any creditor or stockholder may, by petition or bill of complaint setting forth the facts, apply to the court of chancery for a writ of injunction and the appointment of a receiver, and the court, being satisfied by affidavit or otherwise of the sufficiency of the application and of the truth of the allegations made, may issue an injunction against the corporation and its officers and agents, and may appoint a receiver for the creditors and stockholders of the company. We are not called upon to consider the question whether under this statute a creditor whose claim is not reduced to judgment, and who has no lien, can maintain a bill in equity in the Circuit Court of the United States for the appointment of a receiver of a corporation solely on the ground of the insolvency of the corporation. The complainants here are mortgage bondholders and stockholders. They have a lien upon the property of the defendant corporation created by express contract, and an interest in its property which it would seem gives them a standing in a United States court of equity, within the principles enunciated by the Supreme Court in the cases of Scott v. Neely, 140 U. S. 106, 113, 11 Sup. Ct. 712, 35 L. Ed. 358, and Hollins v. Brierfield Coal & Iron Company, 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113.

In the former of these cases the court recognized the doctrine that where a statute of a state creates a new equitable right, capable of enforcement by proceedings in conformity with the pleadings and practice in equity, the right will be enforced in the courts of the United States. The court, however, limited the application of the principle thus:

"The general proposition [the court said] as to the enforcement in the federal courts of new equitable rights created by the states is undoubtedly correct, subject, however, to this qualification; that such enforcement does not impair any right conferred, or conflict with any inhibition imposed, by the Constitution or laws of the United States."

With this qualification, it is the settled doctrine that an enlargement of equitable rights by state statute may be administered by the Circuit Courts of the United States. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52; Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, 33 L. Ed. 909. Now, the preservation, collection, and administration of the assets of an insolvent corporation, through the instrumentality of a receiver, are matters, we think, essentially of an equitable character. Ogilvie v. Knox Insurance Company, 22 How. 380, 392, 16 L. Ed. 349; Graham v. Railroad Company, 102 U. S. 148, 161, 26 L. Ed. 106; Blake v. McClung, 172 U. S. 239, 254, 19 Sup. Ct. 165, 171, 43 L. Ed. 432. Mr. Justice Bradley, speaking for the court in Graham v. Railroad Company, supra, said:

"When a corporation becomes insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A court of equity, at the instance of the proper parties, will make those funds trust funds which in other circumstances are as much the absolute property of the corporation as any man's property is his."

Upon the principles laid down by the Supreme Court in the several above cited cases, there seems to be no valid objection to the present complainants—who are mortgage lien creditors and stockholders of the defendant corporation—seeking in the United States Circuit Court the remedy in chancery by injunction and the appointment of a receiver given by the New Jersey statute against an insolvent corporation, the court otherwise having jurisdiction of the case by reason of the diverse citizenship of the parties and the value in dispute.

But the bill of complaint here does not rest upon the statute of New Jersey exclusively. It sets forth a case cognizable by the court under its general equity powers. The bill not only alleges that the defendant corporation was insolvent, but, as we have seen, it charges that such insolvency was produced by the gross mismanagement of its directors; and, furthermore, the bill charged the directors with positive misconduct involving breach of trust. Insolvency of a corporation, coupled with gross mismanagement of its affairs by its board of directors, and such misconduct of the directors as is here charged justify the appointment of a receiver by a court of equity independently of any statutory authority. Towle v. American, etc., Society (C. C.) 60 Fed. 131; Doe v. Northwest Coal, etc., Co., 64 Fed. 928; Aiken v. Colorado River Irr. Co. (C. C.) 72 Fed. 594; Arents v. Blackwell's Durham Tobacco Co. (C. C.) 101 Fed. 338.

Upon the whole, we are of opinion that the bill presented a case of which the Circuit Court sitting in equity had jurisdiction, and that the appointment of a receiver was within the authority of the court. We also think that there was evidence to sustain the findings of the court and to justify the order appointing a receiver. Whether a receiver should be appointed was a matter largely within the discretion of the court, in view of the special circumstances of the case. Upon a careful examination of the evidence, and having regard to all the circumstances, we cannot say that the order appointing a receiver and granting an injunction was improvidently made.

It was urged at the argument that the order appealed from is equivalent to a final decree. Although there is no assignment of error to bring this question before us, still it deserves present consideration. As we read the order it was not intended to be a finality, and is not so in legal effect. The Franklin Electric Light Company v. Ft. Wayne Elec. Corp., 58 N. J. Eq. 543, 43 Atl. 650. But, to remove any possible doubt on this point, we will amend the order by striking from the fifth paragraph the concluding words, "and especially by the act of the Legislature of the state of New Jersey entitled 'An act concerning corporations, Revision of 1896,'" and substitute therefor the words, "the receiver to be subject at all times to the orders and directions of this court," and we will add at the end of the order the following provision, "the foregoing order to stand until the further order of the court"; and as thus amended the order of June 30, 1903, is affirmed.