WILLIAM J. THOROUGHGOOD,

*vs.*

GEORGETOWN WATER COMPANY.

*Sussex, Sept.* 19, 1910.

A general appearance for a corporation by its solicitor cures insufficient service of process, served personally on three persons forming a part of the board of directors.

A corporation furnishing water to the inhabitants of a town, and to the town for municipal purposes, including service to fire plugs, and occupying the streets of the town with its conduits, though the corporation has not been given the right of eminent domain, or any other right usually accorded to *quasi* public corporations, is a "corporation for public improvement."

The statute authorizing the appointment of a receiver of an insolvent corporation on the ground of insolvency is remedial, and gives to the Court of Chancery equity powers it did not previously possess; but the mere insolvency of a public service corporation does not justify the appointment of a receiver therefor.

A stockholder of a public service corporation may not sue for the appointment of a receiver of the corporation on the ground of insolvency only.

Equity, independent of statutes, may appoint a receiver of a corporation, and through it take possession of its property and administer its affairs because of gross mismanagement, positive misconduct, or other breach of trust by its officers, and probably, except in rare cases, only when insolvency has resulted from such misconduct; the power of the Court of Chancery being to grant relief to prevent injuries to property rights where no adequate relief is given at law.

That the majority of the directors of a public service corporation are non-residents, and that they have removed the books of the corporation, does not justify the appointment of a receiver; for the non-resident officers may conduct the business of the corporation through others, and neither minority stockholders nor directors may disturb the control of the majority merely because they do not attend in person to the corporate affairs.

The grant to a corporation organized to operate as a private business enterprise works of general public utility under grants of a franchise or a monopoly, or of the right of eminent domain, is subject to an implied condition that the corporation will assume an obligation to fulfill the purposes on account of which the grant was made.

The fact that officers of a public service corporation are absent from the State, so that there is no one with authority to expend the income of the corporation for necessary repairs, without which the plant may deteriorate, to the loss of creditors and stockholders, does not justify the appointment of a receiver; the income of the corporation being largely in excess of the operating expenses, and those managing the

affairs applying the income to the payment of interest on the bonds rather than in keeping up the plant, and it not appearing that the deterioration of the plant has reached such a stage as to jeopardize its efficiency.

BILL FOR THE APPOINTMENT OF A RECEIVER. The defendant Company, with an authorized capital stock of $25,000, was organized for the purpose of supplying water to the inhabitants of the town of Georgetown, and, under authority of its charter, on August 1st, 1902, executed a mortgage covering all of its propetry to secure bonds aggregating $25,000. In addition to said mortgage, there were liens against said Company, consisting of general judgments and mechanics' liens, and other debts. The complainant, who was a bondholder, stockholder and creditor of the company, alleged insolvency, inasmuch as the income from the company's plant was insufficient to pay the interest on its bonds and other liens, its operating expenses and the cost of needed repairs to the plant, and prayed for the appointment of a receiver to take charge of, and administer the estate, effects, rights, claims and property of the company. The important allegations of the bill are stated in the opinion.

*Whiley & Jones*, for the complainant.
*Charles W. Cullen*, for the defendant.

THE CHANCELLOR: The subpœna was directed to three persons in a suit against the Georgetown Water Company, and was served personally on them. By the bill it appears that the three persons were part of the board of nine directors of the company, the complainant being another. This was an insufficient service, of course; but a general appearance for the company by its solicitor cured the defective service.

An answer was filed by the three directors named in the subpœna. This answer does not purport to be the answer of the company, but of the three directors, and they admit all of the allegations of the bill, further alleging that the other five directors are non-residents and that they have no books of the company or its seal, and do not know the whereabouts

of the president, secretary, or treasurer of the company. This is not the answer of the company, and therefore the cause cannot be heard under the rules on bill and answer. As the time for answering has expired the complainant may move for a decree *pro confesso* and set the case down for hearing on notice to the solicitor for the defendant, under the rules.

At the regular term, on September 5th, 1910, at Georgetown, the solicitor for the complainant and defendant read the bill and so-called answer, and after some argument the case was left with the Court; the Chancellor saying he desired to consider the case.

Considering, therefore, the cause as on hearing after a decree *pro confesso* for want of an answer by the defendant, the allegations of the bill are these:

That the company was duly incorporated June 3d, 1902; that the complainant is a stockholder, the holder of some of the $25,000 worth of bonds of the company secured by a mortgage given to a trustee, and is also a general creditor; "that said corporation was organized for and is engaged in the business of supplying water to the inhabitants of said town of Georgetown and to the said town for municipal purposes"; that the company owns land on which its plant is erected and owns pipes and fire plugs in the streets of the town; that in addition to the bonds there are debts, consisting of general judgments and judgments on mechanics' lien claims, and other debts; that the income is about equal to the operating expenses and interest on the bonds, there being a small balance, and not sufficient to pay the liens above mentioned; that in 1902, after incorporation, the stockholders organized, elected a board of nine directors,who elected a person president and another secretary and treasurer, since which there has been no meeting of stockholders or directors; that the president and secretary left Delaware in 1902, taking the books and papers and seal of the company, and since that time have disappeared; that because of the facts above stated there has been no one clothed with authority to incur the expense of necessary repairs now urgently needed, "which if not made said plant will greatly deteriorate in value, to the great detriment and loss of your

orator and of the stockholders and creditors of said company'';
and that there is danger that the property and effects of the
company will be needlessly sacrificed unless the Court appoint
a receiver.

By statute, whenever a corporation shall become insol-
vent, the Court of Chancery, on application of a stockholder
or creditor, may appoint a receiver. But it is provided that
the act shall not apply to a corporation for public improvement.
It is necessary to inquire first whether the defendant is a cor-
poration for public improvement, and the conclusion is inevi-
table that it is. It is serving the town as a public utility com-
pany, furnishing water, not only to the inhabitants, but to
the town for municipal purposes, including service to fire plugs,
and is occupying the streets of the town with its conduits.
It has not by its charter, or otherwise, been given the right of
eminent domain, or any other such right usually accorded to such
*quasi* public corporations, but the allegations of the bill clearly
indicate the general service rendered to the public and the town,
including protection against fire. It is as much a corporation
for public improvement as a company created for furnishing
gas to a city. In *Mayor, etc., v. Addicks*, 8 *Del. Ch.* 310, 43
*Atl.* 297, Chancellor Nicholson held upon the authority of
well-reasoned cases that such a gas company was a corporation
for public improvement, and his conclusion is a sound one.
Public welfare is the basis of the definition. In the one case
not only the comfort of the inhabitants was promoted by a gas
company, but its product when used to illuminate the streets
and public places tended to prevent crime and disorder. A
water company, on the other hand, serves another useful
purpose to the community, and in closely populated communi-
ties is necessary both for sanitary reasons and to provide pro-
tection against conflagrations. Indeed, a public water supply
is probably indispensable to a town of any considerable size,
while a company to furnish gas may not always be so indispen-
sable. Both on reason and authority, then, the defendant
company is held to be a corporation for public improvement,
and as such excluded from the operation of the statute relat-
ing to receiverships of insolvent corporations.

Opinion.

The statute is a remedial statute, giving to the Court of Chancery power it did not theretofore possess, namely, to appoint a receiver for a corporation solely on the ground of insolvency. It follows, necessarily, that the jurisdiction can be exercised upon the application of a simple creditor whose claim has not been reduced to judgment and who has no lien upon the property of the company. See *Jones v. Mutual Fidelity Co.* (*C. C.*) 123 *Fed.* 506, a decision of Judge Bradford in this District based on the Delaware statute. But it is certainly true that mere insolvency is not sufficient ground to give jurisdiction to the Court of Chancery to appoint a receiver of a corporation for public improvement, such as the defendant company is. Of course, if the receivership be auxiliary to a suit based on some other ground, such as the foreclosure of a mortgate, or in aid of an action at law, for a proper reason shown the statute would not prohibit the appointment of a receiver of a corporation for public improvement. As there is now no other suit pending against the company to which the suit is auxiliary, to uphold the jurisdiction there must be found in the bill some other ground of equitable relief than the insolvency of the company.

The complainant is both stockholder and creditor, and as creditor he holds bonds secured by a mortgage made by the company to a trustee for the bondholders, and is also a creditor on an unsecured claim. As stockholder the complainant has no right to maintain the bill based on insolvency, unless there are in the bill other allegations showing jurisdiction for other reasons, and this will be considered later. As bondholder he has no standing, for he has no direct lien, and it seems must enforce his rights as bondholder through the trustee named in the mortgage given to secure his and the other bonds. The terms of the bonds and of the mortgage are not set out in the bill and do not appear, and the trustee is not a party to the suit.

The appointment of receivers of corporations is a development in rather recent times of the application of general powers of the Court of Chancery to grant relief to prevent injuries to property rights where no adequate relief is given by the civil

courts. Without discussing the historical origin of receivers in general, it may be said that they were appointed as auxiliary to other proceedings. It is doubtful if even under the visitorial powers originally in the sovereign and by him delegated later to his Chancellor, and so perpetuated in the Court of Chancery, there is authority in that court to administer the affairs of corporations independent of statutes. *High on Receivers*, §§ 288, 292, and cases cited . The federal courts have in some cases held otherwise. Statutory jurisdiction for the purpose is so generally conferred that it is now generally an academic question.

But courts of equity do, independent of statutes, appoint receivers of corporations, and through them do take possession of the property of the corporation to administer their affairs, enjoin interference by their officers, collect their assets, convert their property into money, wind up their affairs and distribute the assets among the creditors and stockholders. These powers are exercised with great caution and only as exigencies of the case are made to appear by proper proof, after due notice and hearing. It will be found that the basis of such interference is gross mismanagement, positive misconduct, or other grounds showing a breach of trust on the part of the officers of the corporation, and probably, except in rare cases, only when insolvency has resulted from such misconduct. A further statement of the law on the subject or reference to the authorities does not seem necessary at this time in view of the conclusions reached herein.

In this case the basis of equitable interference is not positive mismanagement or fraud causing insolvency, but rather neglect of duty by the officers. These duties the officers owe (1) to the stockholders and creditors of the company as do the officers of all corporations, and (2) to the community, as the representatives of a public service corporation. In the case of *Lawrence v. Greenwich Fire Ins. Co.*, 1 *Paige* (*N. Y.*) 587, which was a bill by stockholders for a receiver, it appeared that the corporation was without an office or place of business, and that it had no officers or other person authorized to take charge of and manage its affairs, and the Court appointed a re-

ceiver to preserve its effects for the benefit of the stockholders generally. So also in the case of *U. S. Shipbuilding Co. v. Conklin*, 126 *Fed*. 132, 60 *C. C. A*. 680, one of the circumstances which determined the Court to appoint a receiver was the fact "that the directors of the company had abdicated their powers and that the company is drifting along without guidance," so that loss was likely to result. Do the allegations respecting the conduct of the affairs of the company confer jurisdiction irrespective of or in connection with insolvency? Clearly the failure to hold meetings of stockholders or directors, the non-residence of the officers, the removal of the books and the disappearance of the president and secretary and treasurer do not of themselves give the power. The non-resident majority of the directors and the officers of the company may be entirely satisfied to have the business of the company conducted by the persons and in the manner heretofore done, and neither minority stockholders nor directors have any power or right to disturb the control of the majority simply because the latter do not attend in person to the corporate affairs. The other allegations as to neglect of duty relate to the failure to apply income to repairs, and this will be considered in connection with the duties of the company to the public.

As a public service corporation the defendant owed duties to the community in view of the rights and franchises conferred on it. When a corporation organized by private persons to erect and operate as a private business enterprise works of general public utility, such as railroads, gas and waterworks, receives aid from the public by the grant of valuable franchises, or public bounties, or a monopoly, or a delegation of the right of eminent domain, the right is subject to an implied condition that the company shall assume an obligation to fulfill the public purpose on account of which the grant was made. 2 *Morawetz on Private Corporations*, § 1129. A water company for supplying water to the inhabitants of a town and for municipal purposes is a *quasi* public corporation, and subject to such limitations and control as that the public interests may not suffer. An exclusive franchise and the right of eminent domain may be granted to such corporation by the Legislature

by general or special acts. Along with these powers is the duty of the company to supply the water, and to so maintain its plant as to be efficient for the purpose. Because they are serving the public in performing a duty which rests upon the municipality, special exemptions are given them. Their property is not subject to seizure and sale by creditors as fully as property of private persons, or strictly private corporations, are liable.

It is urged for the complainant that the bill shows that the public is likely to suffer by a continuance of present conditions, because if repairs now necessary are not made the deterioration in the efficiency of the plant will reach such a stage that it will no longer be operative and the town will be without a water supply. If such were the allegations of the bill it might be held that officers of the company were neglecting their duties to the public as well as to the stockholders and creditors in such a way and to such extent as that the Court of Chancery has, independent of any statute, power to take the affairs of the company from the hands of its officers and administer them, even to the extent of winding up its affairs by a sale of the plant, so that other persons may serve the community by supplying water with the plant. There are authorities which hold that such power exists.

"Whether a receiver shall be appointed is always a matter of discretion, to be exercised sparingly and with great caution in the case of *quasi* public corporations operating a public highway, and always with reference to the special circumstances of each case as it arises." *Sage v. Memphis, etc., R. R. Co.*, 125 *U. S.* 361.

The case of *Cowan v. Penna. Plate Glass Co.*, 184 *Pa. St.* 1, 38 *Atl.* 1075, is instructive, though the remarks quoted were *obiter dicta.* This was a receivership in equity of a private manufacturing company, and the question discussed by the Court was whether in the distribution of the assets a creditor who had obtained judgment after the appointment of a receiver of an insolvent company acquired thereby any priority, and it was held that he did not. The Court said:

"This was a private manufacturing corporation, owing no special duty to the public, and the latter had no direct interest in the continuance of its operations. Creditors and stockholders alone had a direct special interest on the property. The facts which would move a court of equity to place a railroad or other common carrier corporation in the hands of a receiver might not avail to prompt the same decree as against a manufacturing corporation. In the first case, the Court must consider the interests of the public, as well as those of creditors and stockholders. Any act on the part of the corporate officers which would interrupt or suspend the regular continued operations of the corporation in its public capacity, whereby serious inconvenience and loss would result to the public might be sufficient to move the Court to appoint a receiver. And this, even where no complaint is made by stockholders or creditors, for its franchises and privileges were conferred on it by the public, on the condition, express or implied, that it would exercise its functions for the benefit of the public, as well as for the benefit of stockholders."

In the case of *Wayne Pike Co. v. Hammons*, 129 *Ind.* 368, 27 *N. E.* 487, the officers of the company having neglected and refused to apply the income of a toll road ample for the purpose to needed repairs of the roadway, and thereby rendered the property unproductive, it was held that the Court was authorized to appoint a receiver. Whether this was by statutory authority or not is not clear, for the terms of the statute referred to by the Court are not set out in the report.

There is in the case now before this Court no clear statement of such gross mismanagement by the officers of the company, or fraud amounting to a breach of trust on their part, or even allegations that the insolvency of the company was caused by such conduct of the officers, as has moved courts elsewhere to appoint receivers of corporations. The apparent insolvency of the company is not charged to any misconduct or mismanagement of the officers of it. The extent of the charges is that, by reason of the absence of certain of the officers, there is no one with authority to expend the income of the company for the necessary repairs, without which the plant will greatly deteriorate in value, to the loss of the creditors and stockholders. But this is not sufficient to move the Court to exercise its powers against the officers. It appears that the income is largely in excess of the operating expenses, and those managing its affairs apply these moneys to the payment of

interest on the bonds rather than to keeping up the plant, and it does not at all appear that there is no authority to do otherwise. It does not appear that there is a prohibition on the manager to so use the income, nor does it appear that the deterioration of the plant has reached such a stage as to jeopardize the efficiency of the plant.

In view of the great caution to be exercised in taking the management of the affairs of a corporation from the hands of its chosen officers, it is not clear that such power should be exercised in this case. If it should be made to appear that there is no way by which the directors, including the complainant, can apply the income to the maintenance of the efficiency of the plant, and that by reason thereof the plant is or will reasonably soon be inefficient, whereby the interest not only of the community, but also of creditors and stockholders will suffer serious injury, and the apparent indifference of the other officers of the company to its managenent becomes more clear, to the likely detriment of the utility of the company, the Court may be justified in taking possession of the affairs of the company and administering them to meet such conditions. As the case now stands the Chancellor does not feel that the resources and power of the directors have been exhausted to remedy the conditions complained of.

An opportunity will be afforded the complainant to make further representations to the Court and the proper order will not be entered at once.

The bill of complaint was afterwards amended and a receiver appointed. See *post* *p.* 330.