# CAMPBELL et al. v. PENNSYLVANIA INDUSTRIES, Inc.

Civ. No. 1238.

United States District Court
D. Delaware.

May 24, 1951.

James R. Morford, and Edward W. Cooch, Jr., Morford, Bennethum, Marvel & Cooch, Wilmington, Del., and James J. Crisona, New York City, for plaintiffs.

Caleb S. Layton, Richards, Layton & Finger, Wilmington, Del., Earl F. Reed, Charles M. Thorp, Jr., William C. O'Neil, Thorp, Bostwick, Reed & Armstrong, Pittsburgh, Pa., for defendant.

RODNEY, District Judge.

This case is before the court upon certain motions of the defendant and of the plaintiffs. The particular nature of these motions will appear more fully from the summarized statement of the case and of the pertinent proceedings taken in it, which follows.

This is a class action, brought by the plaintiffs on behalf of themselves and all other preferred stockholders of the defendant corporation. At the time of the institution of the suit in 1948, the plaintiffs were the owners of approximately sixteen hundred, out of some sixty-five thousand outstanding shares of the preferred stock of the corporation. Their present holdings have been reduced, it appears, to about one hundred shares of the preferred stock. In March, 1950, the plaintiffs filed their amended complaint. The relief sought in the amended complaint is the dissolution of the defendant corporation and the appointment of a receiver to wind up its affairs. Alternatively the plaintiffs sought to have the court compel the declaration of dividends on the preferred stock which was in arrears. Jurisdiction was predicated upon diversity of citizenship and an amount in controversy in excess of the jurisdictional amount.

The allegations of the plaintiffs' amended complaint set out in considerable detail the particular grounds upon which they base their action. Briefly they are these. The defendant corporation was incorporated in Delaware in 1927. It is an investment

company of the type known as an independent, general management, closed-end, investment company. It is a registered investment company within the meaning of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–1 et seq. The capital structure of the corporation consists of cumulative preferred stock and of common stock. The corporation was originally organized by J. H. Hillman, Jr. under the name of "Oil Well Supply Investment Company." At the time of the filing of the amended complaint, the Hillman interests, as they have been called in this litigation, controlled the corporation, owning about 83% of the outstanding voting stock of the corporation.[1] The plaintiffs aver that although the company is held out to the public to be an "independent, general management, closed-end, investment company," its corporate purposes have been destroyed by the acts of Hillman and of the Hillman interests, and it has become a corporate instrumentality of the Hillman interests, "functioning as a part of the financial department of a complex labyrinth of interlaced corporate business and industrial enterprises— and not functioning solely or even principally in the interests of defendant's stockholders." It is also alleged that in their management of the defendant corporation, the Hillman interests have acted in derogation of the national public interest and the interest of investors, as laid down in the Investment Company Act of 1940, and in so doing have changed the character of the corporation.

It is further alleged that the preferred stockholders of the corporation originally contributed the major part of the capital of the corporate venture, and that they have nothing to gain and much to lose from a continuation of the corporate venture, since they were at the time of the filing of this suit equitably the owners of all the assets of the corporation.

The complaint then states that Hillman and the Hillman interests, by virtue of their position as officers, directors and controlling stockholders of the defendant corporation, occupy a fiduciary position in relation to the plaintiffs and other preferred stockholders; but that they have acted in derogation of their fiduciary duty and have engaged in continuous acts of corporate mismanagement, fraud and waste and have employed the assets and facilities of the defendant corporation "in furtherance of a scheme to build a complex labyrinth of interlaced corporate structures for the primary profit and advantage of Hillman and the Hillman interests."

Then follow allegations of what are stated to be "specific acts of fraud, mismanagement and violations of such fiduciary relationship, as well as acts illustrative of the failure of corporate purposes and of the acts in derogation of the public policy declared by the Investment Company Act of 1940." Among these are alleged manipulations of the defendant's investment portfolio, in such a way as (1) to shift losses from Hillman and the Hillman interests from themselves on to the defendant corporation, and (2) to deprive the defendant of profitable investment opportunities and to divert such opportunities from the defendant to the Hillman interests.

The plaintiffs set forth what is said to be an instance of the first type of alleged manipulation of the investment portfolio, involving what is called the "Bankshares transaction," which occurred in 1930. The alleged facts involved in this transaction are briefly these. In May, 1930, Hillman and members of his family owned 100% of the stock of Hillman Investment Company. Hillman Investment Company owned 171,420 of the total outstanding 206,009 shares of the common stock of Pennsylvania Bankshares & Securities Corporation. The latter corporation was dominated and controlled by the Hillman interests. Hillman Investment Company offered to defendant corporation its holdings of 171,420 shares of Pennsylvania Bank-

---

shares in exchange for an equal number of shares of the common stock of the defendant. This offer was accepted and the exchange of stock was effected. The plaintiffs allege that by virtue of his relationship to Bankshares and various banks, Hillman knew of the inherent weakness and speculative risk at that time of investment in bank shares. Hillman and his associates are said to have thus transferred a potential and, as it turned out, an actual loss from themselves to the defendant corporation.

The plaintiffs next set out in considerable detail a case of diversion of corporate opportunity from the defendant corporation to Hillman and the Hillman interests. This is alleged to have occurred during the period approximately from 1940 to 1945, and involved the acquisition by various corporations owned or controlled by Hillman and the Hillman interests of stock of Kentucky Natural Gas Corporation and Memphis Natural Gas Company. This turned out to be an extremely profitable investment, but the plaintiffs complain that Hillman and the Hillman interests diverted the opportunity to purchase these shares of stock largely to themselves, with the result that the defendant acquired only a relatively small part of all the shares of stock of Kentucky and Memphis (subsequently merged into Texas Gas Transmission Corporation) purchased by the Hillman interests, although Hillman and the Hillman interests were under a duty, as directors and controlling stockholders, to give the defendant the opportunity of acquiring all the stock of these corporations which was available.

Other matters which are more particularly complained of by the plaintiffs are the alleged wilful failure to declare dividends on the defendant corporation's preferred stock, for the purpose of enhancing the value of the common stock; the acquisition by the Hillman interests of shares of preferred stock of the defendant corporation after their market value had become depressed because of the non-payment of dividends; the expenditure by the defendant corporation of considerable sums of money in taking part in proxy contests and litigation in which the defendant corporation had little or no real interest and which were carried on for the benefit of Hillman and the Hillman interests; and the attempted reorganization of the defendant in 1948, by filing a plan for reorganization with the Securities and Exchange Commission which would have unfairly and inequitably enhanced the position of the common stockholders, consisting almost entirely of the Hillman interests, at the expense of the preferred stockholders.[2]

In conclusion the plaintiffs allege that there is an irreconcilable conflict of interest between defendant's preferred and common stockholders. The prayers of the plaintiffs are that the court adjudge the officers and directors of the defendant to have been guilty of fraud and that there has been a failure of defendant's corporate purposes; and that a judgment be entered directing the dissolution of the defendant, the winding up of its affairs and the appointment of a receiver for that purpose. Alternatively the plaintiffs pray that the court order the defendant to pay the plaintiffs and all other preferred stockholders all unpaid cumulative dividends.

The defendant filed two motions directed to the amended complaint. One was a motion for summary judgment under Rule 56, Fed.Rules Civ.Proc. 28 U.S.C., which motion was supported by affidavits to which counter-affidavits were filed by the plaintiffs. The other was a motion to dismiss under Rule 12, for failure to state a claim upon which relief could be granted. These motions sought to raise the question whether the plaintiffs were entitled as a matter of law to the relief which they sought, the defendant taking the position that there was no genuine issue of material fact in the case.

These motions were argued on December 1, 1950. On December 8, 1950, while the matters presented to the court by the defendant's motions were under consideration

2. It appears that this latter plan was abandoned after the institution of this suit, but that the corporate charter was subsequently amended, as is indicated in footnote 1 above.

and undetermined, the plaintiffs filed a motion seeking the appointment of a temporary receiver for Pennsylvania Industries, Inc., with certain limited powers to prosecute an action against Hecla Coal & Coke Co. in an appropriate jurisdiction. The motion stated that a derivative stockholders' action had been instituted in December, 1948, in the Court of Chancery of the State of Delaware, by certain stockholders of Pennsylvania Industries, Inc., some of whom were the same as some of the plaintiffs in the present action; and that the action filed in the Court of Chancery was for the purpose of asserting a claim on behalf of Pennsylvania Industries against certain parties, more particularly W. J. Rainey, Inc., a Delaware corporation, and Hecla Coal & Coke Co., a Pennsylvania corporation. The basis of the suit was the alleged diversion of corporate opportunity involved in the Texas Gas Transmission transaction, which has been outlined in the summary of the matters alleged in the plaintiffs' amended complaint. It appears from the matters stated in the motion that in the Chancery suit, Hecla Coal & Coke Co. had moved to quash the service of process, and that that motion was granted by the Vice-Chancellor, with the result that Pennsylvania Industries' alleged claim, amounting in value to some $1,250,000, could not be prosecuted against Hecla in Delaware, but would have to be prosecuted in Pennsylvania. The further allegations of the motion are to the effect that the plaintiffs in the Chancery action are not in a position, by reason of the restrictions placed on the maintenance of stockholders' derivative actions by Pennsylvania law, to institute suit against Hecla in Pennsylvania; that there is imminent danger of loss to Pennsylvania Industries of the claim against Hecla unless immediate steps are taken to bring an action against Hecla in an appropriate jurisdiction; that Pennsylvania Industries had failed and refused to bring such an action; and that the prosecution of the claim could be most effectively accomplished through the appointment of a receiver by this court for that purpose.

The motion of the plaintiffs was argued before the court on January 16, 1951.

Shortly thereafter the defendant filed in this case a supplemental affidavit in support of its original motion for summary judgment. The contents of this affidavit were to the effect that the board of directors of the defendant corporation had caused to be mailed to all holders of its preferred stock an Invitation to Tender, pursuant to which the corporation agreed to accept for purchase and retirement all of its preferred stock tendered at a price of $164 per share, representing $100 per share plus all arrearages of dividends on such stock as of January 27, 1951. The involuntary redemption value of the preferred stock is $100 per share, and the contention is made in the affidavit that even if the court granted all the primary relief sought in the amended complaint (i. e. dissolution of the defendant corporation), the plaintiffs' recovery would be limited to $100 per share and accrued dividends, which would be no more than could be obtained by an acceptance of the Invitations to Tender. It is also stated in the affidavit that as of January 20, 1951, the net asset value of the defendant's preferred stock was $255.45, and of its common stock $177.73 per share. From the copy of the Invitation for Tenders annexed to this affidavit, it appears that J. H. Hillman, Jr. and members of his family had advised the company that they did not intend to tender any of the preferred stock held by them, amounting to 56.33% of the outstanding preferred shares.

On February 16, 1951, the plaintiffs filed a further motion, praying for the appointment of a receiver forthwith, both as a temporary receiver until final hearing and as a permanent receiver thereafter, and for an order awarding to the plaintiffs and their attorneys and accountants adequate compensation for services rendered on behalf of the preferred stockholders. This latest motion, as subsequently amended in respect to some of the recitals contained in it, is predicated more particularly upon two alleged grounds. First, it is averred that certain of the plaintiffs in this action have sold some or all of the shares held by them at the time of the commencement of this action without knowledge that they were being purchased for or on behalf

of the Hillman interests and without knowledge of an alleged fraud being perpetrated in connection therewith by the Hillman interests. The essence of the fraud, according to the plaintiffs' contentions, seems to have been that the Hillman interests profited improperly and unlawfully from these transactions by reason of their position as "insiders." Second, there are averments with respect to the capital readjustment plan of the Pittsburgh Steel Company, which is alleged to be controlled by the Hillman interests. The gist of the complaint in this instance is that, by virtue of making an exchange of Pittsburgh Steel securities under the plan and subsequently selling certain of the stock received in exchange to another corporation controlled by the Hillman interests at about $15 a share, when the shares in question were allegedly worth in fact considerably more, Pennsylvania Industries suffered a large loss which was caused by the fraudulent conduct of its management in executing these transactions. This motion was argued on March 9, 1951.

The court, therefore, now has before it the matters raised by the defendant's two motions (for summary judgment and to dismiss), as well as the motions of the plaintiffs for the immediate appointment of a receiver for the purpose of instituting litigation to recover on the defendant corporation's claim or claims against Hecla Coal & Coke Company, and for the appointment of a receiver of all the assets of the corporation for the purpose of safeguarding the interests of all the stockholders of Pennsylvania Industries not associated with the Hillman interests.

## I. Defendant's Motions.

I shall first consider the questions presented by the defendant's motions. In support of its motion for summary judgment, the defendant has filed the affidavits of various officers of the defendant corporation, in which the plaintiffs' allegations of fraud, mismanagement and failure of corporate purposes are denied. An examination of these and of other affidavits filed by the parties shows the extent of disagreement as to the underlying facts is quite small, if not negligible. The principal differences are as to the conclusions to be drawn from those facts.

These motions originally presented essentially two main questions. One was whether the plaintiffs' complaint, as amended and as amplified by the affidavits, states a case which would warrant the court to order the winding up of the affairs of the corporation, the appointment of a receiver for that purpose, and the dissolution of the corporation. The other question related to the compelling of a declaration of a dividend on the preferred stock. However, as to the latter, counsel for the plaintiffs has conceded that the matter has become moot by reason of the Invitations to Tender issued by the defendant, and there is therefore no need to consider it further.

With respect to the question of the winding up of the corporation and the appointment of a receiver for the purpose, it must be noted that the defendant corporation is not alleged to be insolvent, and it is not upon such a ground that the plaintiffs seek relief in this action. Although courts of equity formerly entertained some doubts as to their power to appoint receivers for and to liquidate solvent corporations, it now seems to be well established that a federal court, sitting as a court of equity, has inherent power to order the liquidation of a solvent corporation, where there is no other course available to remedy a situation which is inequitable to the stockholders.[3] In granting such relief the federal court looks to federal law and not to state decisions to determine the principles which are to be applied.[4] It appears, however, that the federal decisional law of this circuit and the decisional law of Delaware on the question

3. Securities and Exchange Commission v. Fiscal Fund, D.C., 48 F.Supp. 712; Tower Hill-Connellsville Coke Co. v. Piedmont Coal Co., 4 Cir., 64 F.2d 817, 91 A.L.R. 648.

4. S. E. C. v. Fiscal Fund, D.C., 48 F. Supp. 712; Orth v. Transit Investment Co., 3 Cir., 132 F.2d 938.

now being considered are in accord.[5] Among other situations which may warrant or require a court of equity to appoint a receiver to liquidate a solvent corporation is a deadlock between contending factions seeking to control and manage a corporation, abandonment of corporate functions, failure of corporate purposes, and gross fraud and mismanagement on the part of directors and controlling stockholders involving a breach on their part of the fiduciary or quasi-fiduciary duty owed to minority stockholders.[6]

It is upon the last two of these grounds that the plaintiffs here rely. First, they allege gross fraud and mismanagement on the part of the defendant's directors and controlling stockholders, who are generally referred to as the Hillman interests. They point to certain transactions, such as the "Bankshares" transaction and the Texas Gas Transmission transaction, and more recently the Pittsburgh Steel Securities transaction, not necessarily as being in themselves sufficient to entitle them to the relief sought, but as demonstrative of a continued course of conduct indicative of misconduct ·perpetrated for the benefit of the Hillman interests and to the detriment of the independent stockholders.

■ A further principle, however, is operative in a situation of this sort, and that is that a court of equity will appoint a receiver to wind up a corporation in circumstances of gross fraud and mismanagement only where the misconduct of directors is current and danger of loss to the corporation is imminent. Thus in Lichens Co. v. Standard Commercial Tobacco Co., 28 Del.Ch. 220, 40 A.2d 447, 452, in which the appointment of a receiver to liquidate a solvent corporation was sought, the court made this statement: "But, conceding the inherent power of a court of equity to appoint a receiver for a solvent corporation, as we have seen, the right must be exercised with great caution, and only when there is real imminent danger of ma-

terial loss that cannot be otherwise prevented." In Tower Hill-Connellsville Coke Co. v. Piedmont .Coal Co., 4· Cir., 64 F.2d 817, 828, 91 A.L.R. 648, in which the action of the lower court appointing a receiver to wind up the affairs of the Tower Hill-Connellsville Coke Co. was affirmed, the court summarized, in part, the basic reasons for its conclusion in these words: "When it appeared that the majority stockholders were continuing to abuse their power and were controlling the assets in a manner which threatened the destruction of the interests of the minority, it was the duty of the court in the pending suit to grant adequate relief, even though this involved the winding up of the affairs of the corporation." The important factors in that case thus seem to have been not only the abuse of power by the majority stockholders, but also the present imperiling of the rights of the preferred stockholders and the imminent possibility of almost total loss of the assets of the corporation.

■ Applying these principles to the present case, it is quite clear that whatever abuse of trust there is or may have been in the management of the affairs of the defendant corporation by the directors and majority stockholders, there is no present imminent danger of serious loss to the preferred stockholders. It not only appears that the present asset value of the preferred stock far exceeds the amount to which the preferred stockholders would be entitled upon a liquidation of the corporation, but that the common stock now has some equity in the assets of the corporation. Current dividends on the preferred stock are, I understand, being met, and in addition to this there has been the Invitation to Tender which would seem effectually to remove any conceivable apprehension of possible future loss by the independent preferred stockholders.

Apart from the absence of an imminent danger of serious loss, it has been argued by the defendant that the acts of misman-

5. For instance the case of S. E. C. v. Fiscal Fund, supra notes 3 and 4, is cited with approval in Lichens Co. v. Standard Commercial Tobacco Co., Inc., 28 Del.Ch. 220, 40 A.2d 447, which was in turn cited with approval in Feldman v. Pennroad Corp., D.C., 60 F.Supp. 716, decided in this district in 1945.

6. 40 Col.L.Review 220.

agement upon which plaintiffs rely are not current, and that under the principle that mere apprehension of future misconduct based upon prior mismanagement will not authorize the appointment of a receiver,[7] past acts of mismanagement cannot afford a sufficient basis for the relief here sought. The plaintiffs, on the other hand, have taken the position that they rely not only upon past acts of mismanagement, but also upon certain recent instances of misconduct; in addition, the plaintiffs contend that the facts pertaining to the Pittsburgh Steel reorganization which are recited in their motion of March 2, 1951, afford a further instance of fraudulent misconduct on the part of the directors and majority stockholders of the defendant. I do not think, however, that it is necessary to consider this particular point further or to determine it. Whether or not the directors and majority stockholders of Pennsylvania Industries are currently mismanaging the affairs of the corporation for a fraudulent or improper purpose, it is clear, as has been stated, that there is no imminent danger of serious loss to these plaintiffs and that a showing of such imminent danger is essential to the obtaining of the extreme relief of dissolution of the corporation.

■ The second ground upon which the plaintiffs seek to have the defendant corporation wound up is that of failure of corporate purposes. There are cases in which a court of equity has decreed the winding up of a corporation because of abandonment of its functions or failure of its main purposes.[8] In the present case it seems to be agreed that the main purpose of the defendant corporation was to invest in corporations operating in or servicing the Pittsburgh industrial area. There is little question that this has been done, and the undisputed facts show that as of the present time these investments, in the aggregate, have been profitable. The corporation is actively engaged in the business for which it was organized. Mismanagement or fraud on the part of the directors are not, in my opinion, necessarily equivalent to failure of corporate purpose, and in this case there is no showing of the latter condition.

■ The conclusion which I reach on this phase of the case, therefore, is that the facts as alleged by the plaintiffs and as further elaborated in the affidavits as filed would not warrant the court in granting the extreme primary relief which they seek, namely, the winding up of the affairs of the corporation and the appointment of a receiver for that purpose. It is clear from the authorities that such a measure is one to be adopted by a court of equity only under most compelling circumstances; and in this case, as has been observed, there is no indication of that imminent danger of serious loss which appears to be a necessary condition precedent to the exercise of such drastic powers.[9] If there have been acts of fraud or mismanagement on the part of the directors and majority stockholders, there are or were other remedies available to the corporation or its stockholders for which dissolution or liquidation cannot be arbitrarily substituted in the absence of a showing of extraordinary circumstances of the extreme nature above mentioned.[10]

■ I have not felt it necessary to dwell on the question of the power of a federal court, sitting as a court of equity, to dissolve a corporation as distinguished from its power to order the winding up of its affairs. Clearly dissolution is the more drastic action, and if this is not a case for winding up the corporation, dissolution by decree of this court could not be granted.

7. See Feldman v. Pennroad Corp., D.C., 60 F.Supp. 716.

8. 40 Col.L.R. 220, 227; S. E. C. v. Fiscal Fund, Inc., D.C., 48 F.Supp. 712.

9. Thoroughgood v. Georgetown Water Co., 9 Del.Ch. 84, 77 A. 720; Lichens Co. v. Standard Commercial Tobacco Co., supra note 5; and see Maxwell v. Enterprise Wall Paper Mfg. Co., 3 Cir., 131 F.2d 400, 401.

10. See Maxwell v. Enterprise Wall Paper Mfg. Co., supra note 9, and the other cases cited above.

At an earlier point in this opinion it was observed that the parties not only differ as to the conclusions to be drawn from the facts of this case, as they appear in the amended complaint and affidavits, but also disagree sightly in some minor factual matters. This, however, will not prevent the granting of the defendant's motion of summary judgment. Summary judgment may not be granted where there is a "genuine issue of material fact." I have concluded that the plaintiffs' complaint, taken in conjunction with all the affidavits as filed, does not state a case which would either require the court to grant or even warrant the court in granting the primary relief sought (i. e., winding up the corporation). I have not attempted to pass on the question whether in fact there has been fraud or mismanagement in the affairs of this corporation, or on other factual questions which may be involved in a detailed consideration of the particular transactions complained of. I hold simply that this court has no power in the circumstances as shown and made out by the plaintiffs to order a liquidation of this corporation and the appointment of a receiver for that purpose, and that defendant's motion for summary judgment as to this phase of the case must accordingly be granted.

## II. Plaintiffs' Motions.

The purport of the plaintiffs' two motions has been outlined above. What the exact nature of these motions is and precisely what function they perform or are intended to perform in the present litigation is not entirely free from doubt. In some respects they seem to be more in the nature of amendments or supplements to the plaintiffs' complaint, but it is not entirely clear whether the plaintiffs take the position that the matters presented in the motions constitute an independent ground of relief separate and apart from the matters mentioned in the complaint itself.

The conclusion having been reached that the defendant's motions must be granted, it seems reasonably clear that if the plaintiffs' motions are to be regarded as somewhat additional to but inseparably connected with the main litigation, the dismissal of the action as a whole must necessarily remove any basis for the granting of the relief sought by those motions.

Even if the plaintiffs' motions could be considered as further pleadings, in the nature of amendments or supplements to the complaint, I am of the opinion that they must in effect be denied. Considering first the application for the appointment of a receiver to prosecute the alleged claims against Hecla, it seems to me that there are two principal obstacles to the granting of the application. One is that the plaintiffs, being preferred stockholders suing not derivatively, but in their own right, have no interest in the prosecution of the claims. The plaintiffs' equity in the corporation is fully and amply covered; they are or were free to realize, by accepting the Invitations to Tender, all that they could possibly recover from the defendant corporation. The successful prosecution of the asserted claims against Hecla could be of no practical benefit to them. The other obstacle is that it does not sufficiently appear that the common stockholders who might benefit from the prosecution of these claims are without any other adequate remedy, by way of instituting a derivative stockholders' action in an appropriate jurisdiction. It is true that the present plaintiffs point out certain serious difficulties which they allege would be encountered by common stockholders in attempting to institute and maintain such an action in Pennsylvania, which is the state of incorporation of Hecla Coal & Coke Co., but it must be remembered that the appointment of a receiver is an extreme and drastic measure, and I think that a clearer case of necessity on the part of those beneficially interested should be shown to exist before this relief could properly be granted.

As to the plaintiffs' most recent motion, it would appear that it falls in reality into three parts. One has to do with the Pittsburgh Steel reorganization, and it is my understanding that the plaintiffs rely on this in part as a further instance of allegedly fraudulent conduct on the part of the defendant's directors and majority

208

stockholders, and that it is thus supplementary to the matters alleged in the amended complaint. This aspect of the case has already been discussed in considering the defendant's motions, and there is no necessity to say anything more in regard to it. Insofar as the Pittsburgh Steel reorganization transaction is relied upon by the plaintiffs as stating another case in which the defendant corporation has a claim against Hecla Coal & Coke Co., and as further justifying or requiring the appointment of a receiver for the purpose of prosecuting the claim, this aspect of the matter has been covered in my discussion of the motion seeking the appointment of such a receiver and requires no further treatment.

■ The second item in the plaintiffs' latest motion, which must be considered, concerns the alleged fraudulent conduct of the Hillman interests in purchasing preferred stock of Pennsylvania Industries in the period since the commencement of this action at prices less than that which could be obtained by an acceptance of the Invitations to Tender. The theories underlying this claim by the plaintiffs are somewhat involved and I do not consider it necessary to state them here. The relief sought in connection with the allegedly fraudulent purchases is as follows:

"* * * a receiver is urgently needed to perform the following immediate functions:

"*   *   *   *   *   *

"(b) To take such action as may be required, under the direction of this Court, to protect the rights of the preferred stockholders of Industries who sold all or part of their holdings to the Hillman interests at a discount after the commencement of this action and prior to the 'Invitation for Tenders' of January 29, 1951."

The only parties to this suit are the plaintiff preferred stockholders and Pennsylvania Industries. As appears from the above quoted portion of the motion, no right either against Pennsylvania Industries or existing in its favor seems to be asserted in connection with the stock acquisitions by the Hillman interests. I am unable to perceive in what respect a re-

ceiver for Pennsylvania Industries would be concerned in a fraud allegedly perpetrated by the so-called Hillman interests on certain stockholders of the company. For this reason alone, I conclude that there is no ground for the granting of the relief sought in relation to this particular transaction.

The last matter raised by the plaintiffs' motion of February 16, 1951, relates to the plaintiffs' application for compensation to themselves and to their attorneys and accountants. The parties have agreed that the consideration and determination of this question should be postponed until the disposition of the other pending matters, and it therefore requires no discussion at the present time.

An appropiate order may be submitted, reserving jurisdiction in the matter to determine the question of compensation to the plaintiffs and their counsel and accountants as indicated in the last paragraph above.