**Josiah LYMAN, as Successor Committee of Mildred O. Brooke, Mental Patient**

**v.**

**Anita O. SPAIN, individually, and as an officer, director and co-dominant stockholder of Ofty Corporation, et al., Appellants.**

No. 84–5600.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 17, 1985.

Order Filed Jan. 17, 1985.

Opinion Filed Oct. 4, 1985.

Thomas M. Raysor, Chevy Chase, Md., was on the motion for summary affirmance or alternatively for summary dismissal.

Robert A. Seefried and Charles P. Muldoon, Washington, D.C., were on the opposition.

Before WRIGHT, MIKVA and BORK, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case is an archetypal example of how greed paired with sloth can subvert the legal system, delaying the vindication of one person's rights for almost two decades. Everyone associated with this litigation must share the obloquy, including in no small degree the lawyers who brought this appeal. Finding no shred of merit in

their arguments, we have previously issued an order summarily affirming the judgment below. We detail the history of this case in this subsequent opinion only to deter such misconduct in the future.

## I.

This ugly family squabble centers on the rent from two buildings located on Connecticut Avenue in Washington, D.C. The buildings yielded approximately $35,000 a year in rent from long-term leases, and an additional amount from short-term leases. The district court concluded that the value of the two buildings at the time of trial was $575,000.

Ownership and management of these two buildings is the only business of the Ofty Corporation ("Ofty"). Approximately sixty percent of Ofty's shares are owned by eighty-nine-year-old Anita Spain and her sixty-one-year-old daughter, Delores Montgomery. Since 1966, Spain and Montgomery have been Ofty's only officers, and have constituted a majority of the board of directors. They are the appellants. The remainder of Ofty's stock is owned by seventy-five-year-old Mildred Brooke. Brooke was declared incompetent by the district court in 1948. Since 1958 her interests have been represented by Josiah Lyman. He is the appellee.

Between 1966 and 1981, thirty-nine percent of the rents collected by Ofty were consumed by "administrative expenses," mostly salaries and benefits appropriated by the appellants. These expenses were audited for the corporation by an accountant not licensed to practice in the District of Columbia since 1953. Included in the expenses paid by Ofty were gasoline charge slips incurred by the appellants in Rehoboth Beach, Delaware, and similar expenses incurred by Spain's son and grandson in Delaware, New Mexico and Florida. Ofty paid for Spain's son's airfare from Florida. It also paid nearly $10,000 in legal fees to defend the appellants in this suit.

A real estate broker later testified that commercial property like Ofty's generally was managed for six percent, not thirty-nine percent, of the rent. He calculated that Ofty's administrative expenses had been inflated by over $250,000.

Ms. Brooke's minimal return on her investment was originally uncovered in 1965, by a district court auditor. He asked the appellee to obtain financial information from Ofty to correct the problem. The appellee repeatedly requested this information, and did not receive it. Several years passed, however, before the appellee took any legal action on behalf of Ms. Brooke.

In 1969 the appellee retained counsel to protect Ms. Brooke's interest in Ofty, and in 1970 Ofty yielded the relevant information. For four years, no further action was taken. In 1974, a court auditor noted that while Ms. Brooke's share of the rent over a five-year period was $59,500, she had received only $14,000. The rent was being drained away by Spain and Montgomery's "administrative expenses." The auditor recommended that the appellee "proceed immediately" with further legal action.

Instead, the parties and the auditor met on numerous occasions for the next six years to discuss how to resolve the issue. These coffee klatches continued through 1980. In 1978 the appellee filed an action in district court, the appellants countered with motion to dismiss that was denied, and the case then became dormant. The utter futility of these efforts is evidenced by the fact that Ofty stopped paying any dividends to Ms. Brooke in 1979. Yet the appellee waited another two years before pursuing legal remedies on behalf of Ms. Brooke.

By this point, *fifteen years* had passed since the problem had been identified. Through all this time, the appellants siphoned off Ofty's income as salaries and expenses, and the appellee, an attorney, took no effective action in court to challenge this. Court auditors prepared reports, judges in the district court and the D.C. Superior Court approved them, meetings were held, conversations had, time passed, and nothing was accomplished. The appellee's timidity complemented the

appellants' rapacity. Ms. Brooke had grown old awaiting vindication. It is difficult to discern who deserves the most blame for dawdling, but there is certainly enough to go around.

In May 1981 the district court ordered a status call in the action filed by the appellee, which had been quiescent for three years. The case then proceeded expeditiously through discovery to trial in April 1982. The district court did not enter its findings of fact and conclusions of law, however, until October 1983. The court concluded that the appellants had breached their fiduciary duties to Ms. Brooke and Ofty, abused their trust, wasted corporate assets, mismanaged the corporation, and exercised bad faith. Yet it withheld judgment to allow the parties "one last effort" to settle the case. The appellants offered the appellee a total of $310,000 for Ms. Brooke's forty percent share of Ofty, her claim for waste of corporate assets, and her one-quarter interest in a separate property. (An offer of $1,350,000 was subsequently made, by the tenants, for the separate property alone.) The appellants explained that $310,000 "would amply provide for her needs," since her "life expectancy" was "negative." The appellee declined the offer. He moved for entry of a decree. Seven months later, after Ms. Brooke had been reduced to the status of a public charge, the district court entered a decree appointing a receiver for Ofty on August 11, 1984.

A barrage of activity, quite unlike anything seen before in this case, ensued. A notice of appeal was filed. The appellants, in the name of Ofty, filed a petition for bankruptcy for Ofty in the bankruptcy court in Delaware. They then asked that these proceedings be held in abeyance while the case in Delaware was pending. See 11 U.S.C. § 362 (1982). We granted that motion, in deference to the bankruptcy court, but by that time the court had already dismissed the bankruptcy petition. In re Ofty Corp., 44 B.R. 479 (D.Del.1984). That court observed, "[i]t is clear that the sole purpose of the [bankruptcy] filing was to circumvent the effect of the District Court order entered to resolve years of dispute which the parties could not resolve among themselves. The motion to dismiss must be granted." Id. at 482.

With the bankruptcy case no longer pending, briefing of the appellee's motion for summary affirmance took place. The appellants graced us with a "rejoinder" to the appellee's reply, even though the court's rules do not provide for such a pleading. D.C.Cir.R. 6. Concluding that this appeal was very much akin to the Delaware bankruptcy proceeding in purpose, we granted summary affirmance. We issued an order of affirmance on the day the motion was argued.

## II.

■ The appellants' arguments do not require extended consideration. Their first contention, incredibly, seems to be that the district court's order appointing a receiver is not an appealable order. Their use of the term "interlocutory" is less than precise. In any event, whether they mean that the trial judge acted prematurely or that this appeal is premature, the argument is without merit. The order appointing a receiver was timely, and certainly is appealable. See 28 U.S.C. § 1292(a)(2) (1982) (appellate jurisdiction of "[i]nterlocutory orders appointing receivers").

■ The second issue raised by the appellants is whether the district court erred in appointing a receiver. Abuse of discretion is the standard of review. 12 C. Wright & A. Miller, *Federal Practice and Procedure* § 2986, at 49 (1973). In *Bellevue Gardens, Inc. v. Hill*, 297 F.2d 185 (D.C.Cir.1961), we upheld the appointment of a receiver when the district court had found "a pattern of conduct by the dominant stockholders, and a disposition on their part to continue the pattern, which was seriously prejudicial to the rights and interests of the minority ... [and] no readily available market for the stock of the minority." *Id.* at 187. Clearly, the same facts have arisen here. Yet the appellants claim that we modified the *Bellevue Gar-*

*dens* standard in *Cowin v. Bresler,* 741 F.2d 410 (D.C.Cir.1984), where the court held that a minority shareholder in that case had to allege "fraudulent misconduct which puts the company at immediate risk of great loss," in order to justify a request for appointment of a receiver. *Id.* at 417.

■ . Even a superficial reading of *Cowin* would show that in that case an active public market for the minority shareholder's interest existed. *Id.* at 412, 418. Hence the court could say that one remedy for him was to "withdraw from the corporate enterprise" by selling his shares. *Id.* at 417. Ms. Brooke does not have that option. Arguably, the district court's findings were tantamount to a conclusion that the appellants' fraudulent conduct had put Ofty at immediate risk of great loss. *See id.* at 417 n. 9, 418. Yet that need not be shown here, because in these circumstances "a court-appointed receiver ... is the only relief that will remedy" the pattern of seriously prejudicial loss to the company, and the minority shareholder's interest in it. *Id.* at 417–18. The appointment of a receiver here was far from an abuse of discretion—it was long overdue. The appellants' argument clearly has no merit, and summary affirmance is appropriate. *Walker v. Washington,* 627 F.2d 541, 545 (D.C.Cir.) (per curiam), *cert. denied,* 449 U.S. 994, 101 S.Ct. 532, 66 L.Ed.2d 292 (1980); *see United States v. Glover,* 731 F.2d 41, 45 (D.C.Cir.1984).

The appellants were represented by a number of different attorneys in the course of these proceedings. Unfortunately, none of the attorneys on either side of this miasma were very diligent in their efforts to resolve the matter. Thinking of a frail, incompetent seventy-five-year-old woman entitled to hundreds of thousands of dollars, yet slipping month by month into abject poverty, we think it is necessary to remind counsel of some of their obligations.

The snail pace of this legal malfunction is an embarrassment to bench and bar. A concern for professional standards and for justice warranted an altogether different handling of this matter by all the lawyers involved. We expect the receiver and the trial court to review carefully any legal fees that are sought from this grossly mismanaged corporation and for this grossly mismanaged litigation.

*Summarily affirmed.*