AMR CORPORATION and American Airlines, Inc., Plaintiffs,

v.

UAL CORPORATION, United Airlines, Inc., UA Acquisition, Inc., Air Wis Services, Inc. and Air Wisconsin, Inc., Defendants.

### No. 91 Civ. 7773 (JSM).

United States District Court, S.D. New York.

Jan. 16, 1992.

---

**293**

Dennis J. Block, Joseph S. Allerhand, Helene Jaffe, Weil, Gotshal & Manges, New York City, for American Airlines.

Jonathan J. Lerner, Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom, Andrew J. Frackman, O'Melveny & Myers, New York City, for United Airlines.

Max Gitter, Paul Weiss Rifkind, Wharton & Garrison, New York City, for Air Wis Services, Inc.

## MEMORANDUM ORDER AND OPINION

MARTIN, District Judge:

Plaintiffs, AMR Corporation and American Airlines, Inc. (hereinafter collectively referred to as "American"), bring this action to enjoin the acquisition of Air Wis Services, Inc. ("Air Wis") by UAL Corporation pursuant to a proposed merger of Air Wis with a subsidiary of UAL. Plaintiffs' motive in bringing this action is clearly set forth in paragraph 2 of the amended complaint which states, "Unless injunctive relief is granted by the Court, United will cement its slot domination at O'Hare at the expense of American, which will be injured in its ability to compete against United for traffic to and from Chicago...." Consistent with this claim, the complaint details how severely American will be injured if United successfully takes over Air Wis and therefore secures access to Air Wis' jet slots at Chicago's O'Hare Airport—according to American, a precious and limited commodity.

In addition to alleging the antitrust violations, American seeks to assert a cause of action under Section 14(a) of the Securities Exchange Act alleging that the joint proxy statement which Air Wis and UAL mailed to shareholders on December 19, 1991 is false and misleading. The defendants move to dismiss this claim, contending that American lacks standing to bring the claim since its status as a stockholder arises from the purchase of 100 shares of Air Wis stock on November 1, 1991, which was obviously designed to obtain standing to challenge the proxy disclosure.

It is clear from the face of the complaint that American's interest in this litigation is to prevent the merger of UAL and Air Wis at all costs. In alleging its antitrust claim, American forcefully asserts that it will suffer tremendous financial consequences if UAL ultimately succeeds in taking over Air Wis. Thus, even if Air Wis were to make perfect disclosure and UAL were to pay substantially more than a fair price for the stock of Air Wis, the minor gain that American would achieve on its stock would be overwhelmingly offset by the adverse financial consequences that it perceives would result from UAL's enhanced competitive position at O'Hare.

In seeking to enjoin the merger whether on antitrust or proxy grounds, American is not attempting to advance the general interests of Air Wis shareholders or to promote its own interests as an Air Wis shareholder. While American's complaint and papers in opposition to the motion to dismiss the proxy claims are replete with references to the rights of Air Wis shareholders and the benefits to be conferred upon Air Wis shareholders by adequate disclosure, in reality these matters are of no concern to American. American seeks to enjoin this transaction at all costs, no matter how adverse that action is to the interest of the shareholders of Air Wis.

Defendants' challenge to American's standing to litigate the alleged proxy violations raises a basic issue of federal jurisdiction. As the Supreme Court noted in *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984), one of the Court's "self-imposed limits on the exercise of federal jurisdiction [is a] general prohibition on a litigant's raising another person's rights." The Court also ex-

plained, "The requirement of standing ... has a core component derived directly from the Constitution. A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Id.*

The application of these concepts clearly militates against a finding that American has standing to make these proxy challenges. Here, American does not allege personal injury fairly traceable to the defendants' conduct that is likely to be redressed by the requested relief. For itself, American cannot allege that it is injured as an Air Wis shareholder by any defect in the proxy material. Not only does American allege that it is aware of these defects in the proxy statement, but it is inconceivable that its decision on how to vote as a stockholder on this merger plan would be in any way affected by whatever was contained in the proxy statement. While shareholders have been permitted to challenge proxy materials despite their knowledge of the defects in the materials, those shareholders had a real financial interest in seeing that other shareholders had accurate information, so that the vote would result in all shareholders obtaining the best value for their stock. *See, e.g., Cowin v. Bresler,* 741 F.2d 410 (D.C.Cir.1984); *Dowling v. Narragansett Capital Corp.,* 735 F.Supp. 1105 (D.R.I.1990). As indicated above, American's financial interest lies solely in breaking up this proposed merger not in obtaining the best price for its 100 shares.

Several federal court decisions further illustrate that American lacks standing as a shareholder. In *Piper v. Chris–Craft Industries, Inc.,* 430 U.S. 1, 37, 97 S.Ct. 926, 947, 51 L.Ed.2d 124 (1977), the Supreme Court in dicta noted that a defeated tender offeror suffered damages distinct from "target shareholders" and "peculiar" to its status as a tender offeror. Consequently, the Court found it appropriate to evaluate whether the tender offeror in its capacity as a takeover bidder, rather than in its role as a shareholder, could assert an implied

cause of action under § 14(e) of the Williams Act. *Piper,* 430 U.S. at 34–42, 97 S.Ct. at 946–50 (dicta).[1] Relying on *Piper,* the Sixth Circuit in *Mobil Corp. v. Marathon Oil Co.,* 669 F.2d 366, 370–71 (6th Cir.1981), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982), considered Mobil's interests as a stockholder in Marathon Oil, and determined that Mobil's interests differed dramatically from that of "an ordinary shareholder" in that it had "no interest ... in trying to raise the price of Marathon stock." Therefore, the court concluded that Mobil was not injured as a stockholder, and denied Mobil standing as a shareholder to assert a § 14(e) claim. *Marathon Oil,* 669 F.2d at 371.

Although, unlike tender offerors, AMR might have a minimal interest in the stock of Air Wis gaining value, such an interest is negligible when compared with AMR's real interest in acquiring Air Wis' jet slots. "[G]iven this minuscule stake in any possible recovery, [its] assertion of standing on the basis of a shareholder is without merit." *Kalmanovitz v. G. Heileman Brewing Co.,* 769 F.2d 152, 159 (3d Cir.1985) (considering whether a tender offeror who owned 20 shares in the target company could bring a damage action under § 14(e) of the Williams Act); *accord, Luptak v. Central Cartage Co.,* [1981 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,034, at 91,-352 (E.D.Mich.1979), *aff'd mem.,* 647 F.2d 165 (6th Cir.1981), *cert. denied,* 452 U.S. 963, 101 S.Ct. 3114, 69 L.Ed.2d 975 (1981) ("[P]laintiff's individual stake in the outcome of the suit as a shareholder is minimal when compared with his interest as a potential offeror. Thus, although plaintiff seeks relief as a DIBC shareholder, it would be more realistic to characterize him as a competing tender offeror for purposes of determining his standing to bring his section 14 claims."). As stated by the *Kalmanovitz* court, "It would almost be a sham to permit an individual to bring suit formally in his capacity as a shareholder, when ... his only real stake in the matter,

[1]. The Court argued that the plaintiff was asserting standing based on his status as a tender offeror. However, the Court then proceeded to demonstrate why he could not have based his standing on his role as a shareholder. *Piper,* 430 U.S. at 34–42, 97 S.Ct. at 946–50.

stems from his position as [a potential competing bidder]." *Kalmanovitz,* 769 F.2d at 159.

American argues, however, that in *Marathon Oil* the court held that the tender offeror has an implied cause of action under § 14(e), reasoning in part that allowing such a cause of action would promote the statute's purpose to provide shareholders with accurate information. It is important to note, however, that *Marathon* did not involve the issue of standing to assert another's rights, but rather the question of whether the Court should find an implied cause of action under Section 14(e) on behalf of the tender offeror. Indeed, as noted above, the Court rejected the tender offeror's claim to standing as a shareholder, while implicitly finding it appropriate as a tender offeror. *Marathon Oil,* 669 F.2d at 370–71. American, in this case, is not a competing tender offeror. American is no more than a dog in the manger waiting to pick the bones of Air Wis should the proposed merger die as a result of its efforts.

In the tender offer context, each of the competing tender offerors is holding itself out as willing to purchase the stock of the shareholders whose shares are being solicited. Each is required to make accurate disclosure of relevant information and will suffer a direct and real injury if its adversary is permitted to solicit the purchase of the same shares on the basis of false and misleading information. Thus, each tender offeror is a real participant in the tender offer process regulated by Section 14(e), and recognizing their right to an implied cause of action does no violence to the case or controversy doctrine or to traditional notions of standing.

Here, American is at most an interested bystander. It is not seeking to purchase the stock of Air Wis' shareholders. American is simply trying to bust up a transaction that Air Wis' directors have determined to be in the best interest of all its shareholders, because it hopes to purchase some of Air Wis' assets. There are, no doubt, numerous potential purchasers of various assets that Air Wis might be forced to sell if the proposed merger is not completed. It could not seriously be argued that all those potential purchasers should be granted standing to challenge Air Wis' proxy disclosure.

It is particularly inappropriate to allow American standing to challenge the proxy disclosure in this case where a comparison of the allegations of the original and amended complaints filed by American indicate that the alleged defects in Air Wis' disclosure were matters known to American prior to the time it purchased its shares on November 1, 1991. Thus, in its original complaint, at paragraphs 64 and 65, American complained of false statements allegedly made in a Form S–4 filed by UAL and Air Wis with the SEC on October 18, 1991 approximately two weeks before American became a shareholder. These alleged misstatements do not vary substantially from the statements in the joint proxy filed in December, which American now seeks to challenge. As a matter of policy, this Court views it appropriate to seek to discourage parties such as American from simply purchasing a lawsuit, which is exactly what American hoped to do when it bought 100 shares of Air Wis stock on November 1, 1991.

UAL also moves to dismiss American's tortious interference claim. While American's pleading in this regard is marginal at best, little purpose would be served by addressing that issue at this point. Even in the motion were granted, American would no doubt seek leave to replead. Since the allegations of this claim appear to raise only factual issues relevant to the antitrust claim as well,[2] judicial economy suggests that the merits of plaintiff's tortious interference claim be addressed at the conclusion of the trial which is scheduled for February 10, 1992.

SO ORDERED.

---

**2.** It should be clear from the above that the Court does not anticipate that there will be any additional discovery necessary on tortious interference issues.